**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | | |
|---|---|---|
| MICHAEL HART and<br>HARRISON F. COERVER, JR.,<br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, and PETER BRIAN HEGSETH, in his official capacity as Secretary of Defense,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. ______________ |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION (Article I War Powers & 50 U.S.C. § 1544(b) & (c))**

## I. INTRODUCTION & EXECUTIVE SUMMARY

Plaintiffs Michael Hart and Harrison F. Coerver, Jr. respectfully submit this Memorandum of Points and Authorities in support of their Emergency Motion for Preliminary Injunction to enjoin Defendant Secretary of Defense Peter Brian Hegseth and subordinate military commanders from continuing offensive combat operations, naval blockades, and military expenditures against the Islamic Republic of Iran executed without congressional declaration of war, statutory authorization, or compliance with 50 U.S.C. § 1544(b) & (c).

## II. STATEMENT OF FACTS

From January through late February 2026, Defendant President Donald J. Trump directed a massive, deliberate military buildup in the Persian Gulf and Middle Eastern theater, deploying aircraft carrier strike groups, strategic bomber squadrons, and thousands of combat personnel.

On February 28, 2026, Defendant President Trump ordered United States Armed Forces to launch offensive air strikes and combat operations against Iran. On March 2, 2026, Defendant President Trump reported the strikes to Congress consistent with the War Powers Resolution, but failed to identify any declaration of war or statutory authorization. On April 29, 2026, sixty calendar days elapsed without congressional authorization. On June 3 and June 23, 2026, both chambers of Congress passed Concurrent Resolution 86 (H.Con.Res. 86) ordering the removal of U.S. forces pursuant to 50 U.S.C. § 1544(c). Defendants dismissed the resolution as nonbinding and have maintained active combat operations through October 2026.

## III. LEGAL ARGUMENT

### A. Plaintiffs Possess Article III Constitutional Standing and Statutory Standing Under 5 U.S.C. § 702

Article I, Section 8, Clause 11 guarantees that only Congress may declare war. When the Executive bypasses Congress, it immediately deprives citizens of the constitutional conditions of citizenship, creating a concrete Article III injury without requiring secondary physical or economic harm. Denying standing under the misconception that such injury is merely a 'generalized grievance' improperly surrenders judicial oversight, grants unbridled deference to the Executive, and upends the delicate checks and balances of America's tripartite system of government, shifting unchecked power to the Executive Branch. The Executive Branch is not a principality or fiefdom competing with Congress, but an inferior branch bound by the constitutional structure (*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 233 (1974) (Douglas, J., dissenting)). Under *United States v. SCRAP*, 412 U.S. 669 (1973), an injury is not non-cognizable simply because it is shared by many. Denying citizen standing while restricting legislator standing under *Campbell v. Clinton*, 203 F.3d 19 (D.C. Cir. 2000), would create an unconstitutional judicial black hole, insulating executive overreach from judicial

review. Furthermore, as sworn in their Declarations, Plaintiffs suffer concrete, ongoing personal injuries across several distinct non-monetary categories of lived personal harm (broken oath/loss of consent, moral guilt over civilian casualties, anguish over troop fatalities/injuries causing pain unlike anything in their life, $42B+ budgetary diversion, humiliation before global allies over a nation held captive, and strain on personal overseas relationships). Plaintiffs also possess statutory standing under APA 5 U.S.C. § 702 to challenge Defendant Secretary of Defense Peter Brian Hegseth's ongoing ultra vires execution of deployment orders past 60 days and in defiance of H.Con.Res. 86.

**B. Scope of Relief Available Against Official-Capacity Defendants Under Franklin v. Massachusetts and Mississippi v. Johnson**

Plaintiffs seek declaratory relief against Defendant President Donald J. Trump and Defendant Secretary of Defense Peter Brian Hegseth pursuant to 28 U.S.C. §§ 2201–2202. To respect separation-of-powers principles regarding direct coercive injunctive orders against the Chief Executive under Mississippi v. Johnson, 71 U.S. 475 (1866) and *Franklin v. Massachusetts*, 505 U.S. 788 (1992), Plaintiffs direct their coercive injunctive prayer to Defendant Secretary of Defense Peter Brian Hegseth and subordinate military officers pursuant to 5 U.S.C. § 702 and non-statutory ultra vires review (*Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996)). Enjoining Defendant Secretary Hegseth and subordinate military commanders from executing deployment orders or disbursing funds halts unauthorized warfare without creating a direct constitutional standoff with the Chief Executive.

**C. Plaintiffs Demonstrate a Substantial Likelihood of Success on the Merits Under Article I and the War Powers Resolution**

1. Count I (Article I War Declaration Power): Article I, Section 8, Clause 11 vests exclusive war-declaring authority in Congress. The pre-planned multi-week military buildup

from January to February 2026 conclusively refutes any claim of a sudden, unforeseen defensive emergency under 50 U.S.C. § 1541(c). Defendants' unilateral initiation and continuation of offensive warfare place executive action in Youngstown Category 3 (contrary to expressed congressional will), where presidential power is at its lowest ebb (*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)).

2. Count II (50 U.S.C. § 1544(b) 60-Day Mandate): Section 1544(b) requires the automatic withdrawal of armed forces within sixty calendar days absent congressional authorization. Hostilities initiated on February 28, 2026, exceeded the mandatory 60-day window on April 29, 2026. Defendants' continued prosecution of hostilities for more than 60 days without congressional authorization constitutes a direct statutory violation.

3. Count III (50 U.S.C. § 1544(c) & APA Ultra Vires Action): Section 1544(c) mandates force removal upon passage of a concurrent resolution. The historic bicameral passage of H.Con.Res. 86 on June 23, 2026, formally directed the removal of U.S. forces. Defendant Secretary Hegseth's ongoing execution of military deployment orders and expenditure of public funds in defiance of H.Con.Res. 86 constitutes final agency action executed without statutory authority, actionable under 5 U.S.C. § 702 and *Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996).

**D. The Political Question Doctrine Does Not Bar Judicial Review of Pure Legal Authority Questions**

Distinguishing adverse precedents like *El-Shifa Pharmaceutical Industries Co. v. United States,* 607 F.3d 836 (D.C. Cir. 2010) and *Bin Ali Jaber v. United States*, 861 F.3d 241 (D.C. Cir. 2017), Plaintiffs present a pure legal question: Did the Executive possess constitutional authority under Article I, Section 8, Clause 11 to initiate combat operations against Iran, or statutory

authority under 50 U.S.C. §§ 1541–1548 to maintain offensive combat operations against Iran without congressional authorization or in defiance of H.Con.Res. 86? The constitutional text and the 60-calendar-day mandate of 50 U.S.C. § 1544(b) provide objective, judicially manageable standards under *Baker v. Carr*, 369 U.S. 186 (1962).

**E. Plaintiffs Satisfy the Irreparable Harm, Balance of Equities, and Public Interest Prerequisites**

Ongoing executive prosecution of ultra vires warfare in violation of Article I and 50 U.S.C. § 1544(b) inflicts immediate, irreparable harm for which there is no adequate remedy at law. Ongoing executive action in excess of constitutional and statutory authority—committing national resources and human lives without congressional sanction—causes profound, continuing harm to the constitutional order and to Plaintiffs that cannot be compensated by monetary damages or retroactively repaired. *Cf. Elrod v. Burns*, 427 U.S. 347, 373 (1976) (recognizing that ongoing deprivations of core constitutional protections inflict inherent irreparable injury). The balance of equities and public interest overwhelmingly favor enjoining unauthorized hostilities and enforcing the rule of law.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Emergency Motion for Preliminary Injunction.

Dated: November 1, 2026.

Respectfully submitted,

/s/ Richard Frank Dawahare
Richard Frank Dawahare, Esq.
Kentucky Bar No. 17273
P.O. Box 910804
Lexington, Kentucky 40591-0804
(859) 608-0200

RichardDawahare@gmail.com
*Counsel for Plaintiffs Michael Hart and Harrison F. Coerver, Jr.*